1  Ara Sahelian, Esq., [CBN 169257]
2  SAHELIAN LAW OFFICES
3  25108 Marguerite pkwy, Ste A
   Mission Viejo, CA  92692
4  949. 859. 9200
5  e-mail: contact@sahelianlaw.com
   Attorneys for Karen Magliocco
6
7
8
9          UNITED STATES DISTRICT COURT
10         NORTHERN DISTRICT OF CALIFORNIA
11
12
13
14
15
16  Andres Gomez
17           Defendant.              CASE NO.: 3:21-cv-07148-VC
             vs.
18  The Magliocco Group Inc.         The Honorable Vince Chhabria
             Defendant.
19
20                                   **POINTS AND AUTHORITIES TO
                                     DEFENDANT'S MOTION TO
21                                   DISMISS**
22
23  .                                Hearing Date: 3/17/22
                                     Time: 10:00 AM
24
25
26
27
28

## POINTS AND AUTHORITIES TO DEFENDANT'S MOTION TO DISMISS

### I. BACKGROUND

Plaintiff Andres Gomez ("Plaintiff"), a serial filer, filed suit asserting that a website operated by Defendant Magliocco Group Inc. (hereinafter "Defendant") violated Title III of the American Disabilities Act, 42 U.S.C. § 12181, et. seq. (the "ADA") and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq., (the "Unruh Act").

Plaintiff alleges that he is legally blind and cannot use a computer without the assistance of screen reader software ("SRS"). *Compl.*, ¶¶ 10, 11; that Defendant Magliocco Group Inc. operates privileges, goods or services out of a physical location in California; that these services are open to the public, places of public accommodation, and business establishments, ¶ 12; that Defendant owned or operated a website, with a root domain of: https://silverado-property.com/, ("Website"), ¶ 4; that the Website is a nexus between Defendant's customers and the terrestrial based privileges, goods or services offered by Defendant, ¶ 13; that Defendant offers websites and digital booking as some of the facilities, privileges, and advantages offered by Defendants to patrons in connection with their patronage, ¶ 14; that Plaintiff was a prospective customer who wished to access Defendant's goods and services, and that Plaintiff visited the

2155

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Website in March 2021 and July 2021 with the intent get information about houses on sale in Northern California. ¶¶ 16, 17; that when Plaintiff attempted to navigate the Website, Plaintiff encountered numerous accessibility design faults that prevented him from navigating the site successfully using SRS, ¶ 18; and lastly that Plaintiff has been deterred from returning to the Website as a result of these prior experiences, ¶ 24.

Defendant has submitted a declaration (see Declaration of Karen Magliocco), declaring that Defendant Magliocco Group Inc. does not own or operate customer-facing stores or brick and mortar retail locations in California or anywhere else, the purpose of which would be to meet clients to show and sell properties; that *it does not have an office, and that Ms. Magliocco does not work from an office. Id*, ¶ 2, 5, 6, 7.

Defendant further declares that its Website, does not allow a customer to place an order to purchase property, *Id*, ¶ 9; the properties displayed on its Website are also available for viewing on multiple websites. *Id*, ¶ 9; that even closing documents, such as escrow papers, are signed remotely, using software such as DocuSign, eliminating the need for in person meetings in a traditional office. *Id*, ¶ 10, 11. Given the radical transformation of the real estate business, therefore, other than when viewing a property, there is no

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
Page 3 -

added value for an agent/broker and the customer to meet in person in an office. *Id*, ¶ 11.

Plaintiff Andres Gomez has filed a series of complaints against real estate agents and brokers operating in Napa. See Counsel's Declaration. The complaints are essentially carbon copies of each other, *Id*, ¶ 4. They each allege, in essence, that he was unable to navigate an agent's website, and was, as a result, prevented from using his/her services. This attorney represents a few agents sued by Mr. Gomez. The district court recently dismissed *Gomez v. Smith*, Case Number: 3:21-cv-07154-JCS, U.S. District Court, Northern District of California (San Francisco), The Honorable Richard Seeborg on the basis of arguments presented below.

The Website which Defendant operates is not connected to a brick and mortar facility. Plaintiff, therefore, cannot allege an injury-in-fact coupled with the purported intent to return to a "noncompliant facility," in order to have standing under the ADA.

Counsel have met and conferred over these issues, and are at an impasse. See Declaration of counsel, ¶ 3.

## II. <u>LEGAL STANDARD</u>

### A. Rule 12(b)(1)

1   "A jurisdictional challenge under Rule 12(b)(1) may be made either on the
2
3   face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox*
4   *Family Worldwide,* Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In other
5
6   words, a motion to dismiss for lack of subject matter jurisdiction pursuant to
7   Rule 12(b)(1) can be facial or factual. *Safe Air for Everyone v. Meyer*, 373
8
9   F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts
10  that the allegations contained in a complaint are insufficient on their face to
11  invoke federal jurisdiction." *Id.* "Dismissal for lack of subject matter
12
13  jurisdiction is appropriate if the complaint, considered in its entirety, on its
14  face fails to allege facts sufficient to establish subject matter jurisdiction." *In*
15
16  *re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981,
17  984-85 (9th Cir. 2008). "By contrast, in a factual attack, the challenger
18
19  disputes the truth of the allegations that, by themselves, would otherwise
20  invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. "In resolving a factual
21
22  attack on jurisdiction, the district court may review evidence beyond the
23  complaint without converting the motion to dismiss into a motion for
24  summary judgment." *Id.* When a motion is made pursuant to Federal Rule of
25
26  Civil Procedure 12(b)(1), the plaintiff has the burden of proving that the
27
28

1
2
3
4

court has subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)  overruled on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

5
6
7
8
9
10
11

"In deciding a motion to dismiss for lack of standing, the court can look beyond the pleadings to affidavits and other testimony in order to resolve factual disputes related to  jurisdiction." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1135 (W.D. Wash. 2013)  (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988)).

12
13

**B. Article III Standing**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Article III standing is a jurisdictional requirement, and therefore appropriate subject of a 12(b)(1) motion. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir.2000) (standing is a jurisdictional issue deriving from the "case or controversy" requirement of Article III of the United States Constitution). To have Article III standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)  (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); then

1  citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167,

2
3  180–81 (2000)). To establish an injury in fact, a plaintiff must show that she

4  suffered "'an invasion of a legally protected interest' that is 'concrete and

5  particularized' and 'actual or imminent, not conjectural or hypothetical.'"
6
7  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury

8  is "particularized" only if the wrongdoing actually "affect[s] the plaintiff in a
9
10  personal and individual way." *Id.* Moreover, an injury does not satisfy the

11  "concrete" requisite unless it is "*de facto*; that is, it must actually exist." *Id*. It
12
13  is a plaintiff's obligation to "clearly allege facts demonstrating" he has an

14  injury-in-fact that is "concrete and particularized." *Id*. at 1547.

15  ### III. DISCUSSION
16
17  The Complaint must be dismissed because (1) Plaintiff lacks standing to

18  assert a claim under the ADA, and because (2) the Unruh Act claim falls
19
20  with the ADA claim.

21  ### A. ADA Claim
22
23  Plaintiff has failed to plead an injury-in-fact under the ADA and therefore

24  lacks standing to pursue that claim. Additionally, Plaintiff lacks standing
25
26  because cannot plead deterrence or an intent to return to any place of public

27
28

1   accommodation.

2   To prevail on a Title III ADA claim, a plaintiff must prove that: "(1) he is

3

4   disabled within the meaning of the ADA; (2) the defendant is a private entity

5   that owns, leases, or operates a place of public accommodation; and (3) the

6

7   plaintiff was denied a public accommodation by the defendant because of his

8   disability." *Ariz. ex rel. Goddard v. Harkins Amusement Enters*., 603 F.3d

9

10  666, 670 (9th Cir.2010). In short, to plead an injury-in-fact under the ADA, a

11  plaintiff must allege that he encountered accessibility barriers at a *place of*

12

13  *public accommodation* owned or operated by the defendant.

14  The Ninth Circuit has held that a "place of public accommodation," under

15  the ADA, is limited to "an actual physical place." *Weyer v. Twentieth*

16

17  *Century Fox Film Corp*., 198 F.3d 1104, 1114 (9th Cir.2000). "On their

18  own, websites are not places of public accommodation." *Langer v. Pep Boys*

19

20  *Manny Moe & Jack of California*, No. 20- CV-06015-DMR, 2021 WL

21  148237, at *5 (N.D. Cal. Jan. 15, 2021). Applying *Weyer*, "courts in this

22

23  District have concluded that 'a plaintiff may challenge the online services

24  provided by a brick-and-mortar store,' only if there is a 'nexus between the

25

26  online services and the physical place.'" *Thurston v. FCA US LLC*, 2018 WL

27

28

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
Page 8 -

700939, at \*4  (C.D. Cal. Jan. 26, 2018) (citing *Rios v. New York & Co., Inc*.,

2017 WL 5564530, \*3  (C.D. Cal. 2017)). An online video streaming service,

like Netflix, is not a place of public accommodation. *Cullen v. Netflix, Inc*.,

880 F. Supp. 2d 1017, 1023 (N.D. Cal.  2012). By contrast, "a website

violates the ADA where it does not provide auxiliary aids to order products

for delivery," *Pep Boys*, 2021 WL 148237, at \*5 (citing *Robles v. Domino's*

*Pizza, LLC*, 913 F.3d 898, 905 (9th Cir.), cert. denied, 140 S. Ct. 122

(2019)), or "where the web-based barriers prevent the plaintiff from locating

[defendant's] physical store[.]" *Id.* (citing *Farr v. Hobby Lobby Stores, Inc*.,

2020 WL 3978078, at \*2  (C.D. Cal. Apr. 29, 2020)).

 Further, to establish standing for injunctive relief, which is the only

remedy available under the ADA, a plaintiff must demonstrate a "real and

immediate threat of repeated injury." *See Fortyune v. Am. Multi-Cinema,*

*Inc*., 364 F.3d 1075, 1081 (9th Cir.  2004)). In the ADA context, a plaintiff

must demonstrate either deterrence, or injury-in fact coupled with an intent to

return to the noncompliant facility. *Chapman v. Pier 1  Imports (U.S.) Inc*.,

631 F.3d 939, 944 (9th Cir. 2011).

 Here, Plaintiff has not pleaded that he was prevented from accessing any

physical location, or from ordering any products, or services, as a result of

the alleged barriers on Defendant's Website. The Complaint asserts that when Plaintiff attempted to navigate the Website, Plaintiff encountered numerous accessibility design faults that prevented him from navigating the site successfully using SRS, ¶ 18; and lastly that Plaintiff has been deterred from returning to the Website as a result of these prior experiences, ¶ 24.

Nowhere does the Complaint state that Plaintiff *needed* to navigate the Website in order to avail himself of Defendant's services.

**In short, Plaintiff has not pleaded any nexus between Defendant's alleged failure to provide a readable Website using SRS, and his ability to access a physical location, or take advantage of Defendant's services. Thus, he has failed to plead that he suffered an injury cognizable under the ADA. For the same reasons, Plaintiff has also necessarily failed to plead that he was "deterred" from using Defendant's services, or that he "intends to return" to any physical location.**

Defendant has presented evidence that it does not maintain an office. Thus, the Complaint's allegations that, Defendants denied Plaintiff full and equal access to the facilities privileges or advantages offered to their customers." *Id*. ¶ 23, appears to be a boilerplate allegation that is inapplicable to this Defendant's business.

1
2
3
4
5
6

Because Plaintiff cannot plead a nexus between the alleged web-based barriers and a physical location, the Court should determine that leave to amend is inappropriate, despite Rule 15's liberal amendment policy; and that any attempt to amend the complaint would risk counsel Rule 11 sanctions.

7

**B. Unruh Act Claim**

8
9
10
11
12
13
14
15
16

Plaintiff's Unruh Act claim is predicated on Defendant's alleged ADA violation.  (Compl. ¶¶ 43-47). Ordinarily, a court would not reach a plaintiff's state-law claim when the status of the pleadings on the sole federal claim in the  action is uncertain. Here, however, Plaintiff fails to plead an ADA violation, and the Court should find that Plaintiff's Unruh Act claim necessarily fails. *Accord  Netflix*, 880 F. Supp. 2d at 1024.

17
18
19
20
21
22
23
24
25
26
27
28

Beyond the pleading stage, if a plaintiff wants to prevail on an Unruh Civil Rights Act claim, he must present sufficient evidence to overcome a defendant's argument that he did not actually possess a bona fide intent to use its services. "[w]e do not agree that an Unruh Civil Rights Act claimant's intent or motivation for visiting the covered public accommodation is irrelevant to a determination of the merits of his or her claim. Thurston's argument conflates standing requirements with the merits of her claim. "A litigant's standing to sue is a threshold issue to be resolved before the matter

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

can be reached on the merits." (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000 [24 Cal. Rptr. 3d 474].) Here, Thurston had standing to assert an Unruh Civil Rights Act claim against Omni. What was unclear was whether her factual allegations could overcome Omni's assertion that **she did "not actually possess a bona fide intent ... to use its services."** (White, supra, 7 Cal.5th at p. 1032, italics added.) Following White, the trial court instructed the jurors to make this determination, and they concluded she could not. Consistent with our Supreme Court's guidance on this issue, such conclusion was proper." *Thurston v. Omni Hotels Management Corp.*, 69 Cal. App. 5th 299, 309. (Emphasis added).

    "An individual bringing an Unruh Civil Rights Act (Civ. Code, § 51 et seq.) claim against an online business must allege, for purposes of standing, that he or she visited the business's website, encountered discriminatory terms, and intended to make use of the business's services. These requirements are sufficient **to limit standing under the Unruh Civil Rights Act to persons with a concrete and actual interest that is not merely hypothetical or conjectural..**" *White v. Square, Inc.* (2019) 7 Cal.5th 1019,

1    1032. (Emphasis added).

2
3        This attorney has deposed Plaintiff Andres Gomez in an unrelated case

4    (*Gomez v. Aslan*, Case Number: 21STCV17753, Superior Court of

5
6    California, County of Los Angeles, The Honorable Gregory Alarcon).

7    Declaration of counsel, ¶ 5. Plaintiff has testified that he is domiciled in

8    Florida. *Id*, ¶ 7.

9
10       Defendant sells upscale properties. To qualify for a house in the price

11   range that it sell, an average customer would need to have an annual income

12
13   of $200,000 or more. If Mr. Gomez has been unemployed for a decade or

14   more, he will not qualify. In addition, when Defendant is first contacted by a

15
16   client to discuss properties, a customer must disclose whether he or she is

17   paying cash or financing. In either case, proof of funds is required before

18
19   Defendant confirms an appointments. Declaration of Karen Magliocco, ¶ 4, 5

20       Plaintiff could not possibly qualify for a loan to purchase property in

21
22   Napa, as he testified on July 9, 2021, that he has been unemployed for a

23   decade or more, and that he receives Social Security Disability payments.

24   See Declaration of counsel, ¶ 6, referring to Plaintiff's deposition testimony.

25
26   **IV. <u>CONCLUSION</u>**

27       For all the foregoing reasons, this Court should grant Defendant's Motion

28

1  to Dismiss *with prejudice,* as there is no possibility of curing the complaint.

2      Respectfully submitted:

3                                                        SAHELIAN LAW OFFICES

4

5

6

7                                                        Ara Sahelian, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 14 -**